# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CR-12-175-M |
| | ) |
| CESAR SANTANA-GOMEZ, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is defendant's Motion to Suppress Evidence, filed August 15, 2012. On August 21, 2012, the government filed its response. On August 31, 2012, the Court conducted an evidentiary hearing on defendant's motion to suppress. Based upon the parties' submissions and the testimony presented at the hearing, the Court makes its determination.

I.  Factual Background

On July 2, 2012, at approximately 9:40 a.m., Lieutenant Jason Glass ("Lt. Glass") of the Canadian County Sheriff's Office was conducting a routine patrol on eastbound Interstate 40. During the patrol, Lt. Glass observed a white 2009 Chevrolet Malibu, bearing Minnesota license plate 129JEP, with a rear bumper cover on the driver's side that appeared to be loose. Lt. Glass attempted to run the license plate number twice through dispatch, but the plate did not register a valid return. As a result, Lt. Glass conducted a traffic stop of the vehicle.

Defendant provided Lt. Glass a valid Minnesota driver's license, a copy of an "Application to Title/Reg. A Vehicle" from the Minnesota Department of Public Safety, and a copy of an Arizona Certificate of Title for the vehicle in the name of the previous owner. These documents showed that defendant properly registered the vehicle with the Minnesota Department of Public Safety on March 30, 2012 and that the license plate was both valid and the assigned plate.

Lt. Glass wrote defendant a warning for improper tag display, returned defendant his driver's license, and released him from the traffic stop. A few seconds after Lt. Glass told defendant he was "good to go," Lt. Glass proceeded to ask defendant further questions. Lt. Glass asked if there were drugs, money, or weapons in the vehicle. Defendant replied, "No." Lt. Glass then asked to search the vehicle, and defendant consented.

During the search of the trunk of the vehicle, Lt. Glass noticed aftermarket screws were holding a trim panel in the rear of the trunk. Lt. Glass further observed that the screws used to hold the bumper cover in place were missing in both the driver and passenger side wheel wells. Lt. Glass then called for backup to assist during the search and deployed a narcotic detection canine, Gunner, to conduct a "free air sniff" of the vehicle. The dog provided a positive alert on the rear bumper of the vehicle. Upon searching the vehicle, Lt. Glass noticed what appeared to be an aftermarket compartment in the rear bumper of the vehicle. The vehicle was towed to a garage where the search continued, and Lt. Glass discovered an aftermarket compartment inside the rear bumper that contained 19 black duct-taped bundles. A field test on the content of the bundles indicated the presence of methamphetamine.

II.     Discussion

The Tenth Circuit has stated that:

> The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." A routine traffic stop, however, is more analogous to an investigative detention than a custodial arrest. We, therefore, analyze such stops under the principles developed for investigative detentions in *Terry v. Ohio*. Thus, to determine the reasonableness of an investigative detention, we make a dual inquiry, asking first "whether the officer's action was

2

> justified at its inception," then second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Once an officer discovers that a traffic violation has not occurred, however, the law requires the officer to allow the driver to proceed without further delay.

*United States v. Trestyn*, 646 F.3d 732, 742-43 (10th Cir. 2011) (internal citations omitted).

### A. Justification at the Inception of the Stop

Defendant asserts that Lt. Glass was not justified in stopping defendant's vehicle because there was no Oklahoma traffic violation. The government contends that Lt. Glass had reasonable suspicion to stop defendant's vehicle based upon the computer searches that showed defendant's license tag was not on file.

"[A] traffic stop is valid [at its inception] if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). Additionally, the Tenth Circuit has stated that "a traffic stop will be held reasonable when, under the totality of the circumstances, the officer bears a 'reasonable suspicion' that criminal activity 'may be afoot.'" *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205-06 (10th Cir. 2007) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Further,

> this standard requires an officer to have some minimal level of objective justification, but he or she need not rule out the possibility of innocent conduct as long as the totality of the circumstances suffices to form a particularized and objective basis for a traffic stop. Thus, reasonable suspicion may be supported by a showing considerably less than preponderance of the evidence.

*Id.* at 1206 (internal citations and quotations omitted). To that end, courts have found that an officer has a reasonable suspicion to stop a vehicle and check for proper registration when a computer search indicates the license tag was not on file. *See e.g.*, *United States v. Lee-Speight*, No.

10–40035–01–SAC, 2010 WL 2653412, at *4 (D. Kan. June 29, 2010); *United States v. $85,688.00 in U.S. Currency*, No. 2:09CV00029 DS, 2010 WL 1257634, at *3 (D. Utah Mar. 25, 2010).

In the case at bar, Lt. Glass was justified to stop defendant's vehicle because the computer searches he and his dispatch officer conducted indicated that defendant's vehicle was not on file. While Lt. Glass acknowledged that there may be legal reasons why a vehicle is not on file, Lt. Glass also testified that a vehicle may not be on file because the vehicle is stolen or was used in a crime. Lt. Glass further testified that he would have been less suspicious of defendant's vehicle if the vehicle had a paper tag.[1] Therefore, based upon the totality of the circumstances, Lt. Glass had a reasonable suspicion to stop defendant's vehicle.

Accordingly, the Court finds that Lt. Glass was justified in stopping defendant's vehicle.

B. Scope of Stop

The Tenth Circuit has stated that:

> in the context of an investigatory stop of a motorist, [o]nce an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave. The detention cannot be continued beyond this point unless the driver consents to further questioning or the officer has reasonable suspicion to believe other criminal activity is afoot. Even a very brief extension of the detention without consent or reasonable suspicion violates the Fourth Amendment.

*United States v. Burleson*, 657 F.3d 1040, 1045 (10th Cir. 2011). Additionally,

> [l]engthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further

---

[1] Lt. Glass testified that, based upon his experience, a paper tag would indicate that a vehicle is probably a newly purchased vehicle.

> questioning unrelated to the initial stop is permissible if the initial
> detention has become a consensual encounter.

*United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) (internal citations omitted).

Here, the Court finds that Lt. Glass questioning was permissible because Lt. Glass and defendant engaged in a consensual encounter. Upon careful review of the parties' submissions and the testimony presented at the hearing, the Court finds that Lt. Glass' further questioning unrelated to the initial stop occurred after Lt. Glass returned defendant's license and registration and informed defendant that he was "good to go." Although Lt. Glass posed further questions to defendant within seconds of saying defendant was "good to go," Lt. Glass did nothing to reasonably indicate that defendant was not free to leave. In fact, a review of Lt. Glass' in-car video of defendant's stop shows that Lt. Glass did not coerce the defendant by raising his voice, brandishing his weapon, removing his canine from the back seat, or calling for another officer.

Accordingly, the Court finds that defendant's further questioning resulted from a consensual encounter with Lt. Glass.

III. Conclusion

For the reasons set forth above, the Court DENIES defendant's Motion to Suppress Evidence [docket no. 19].

**IT IS SO ORDERED this 10th day of September, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

5